**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*,<br><br>v.<br><br>NEXSTAR BROADCASTING GROUP, INC.,<br>MISSION BROADCASTING, INC.,<br>COMMUNICATIONS CORPORATION<br>OF AMERICA, and<br>SILVER POINT CAPITAL FUND, L.P.,<br>*Defendants*. | Case:  14-cv-2007 (KBJ) |

## <u>FINAL JUDGMENT</u>

WHEREAS, plaintiff, the United States of America, having filed its Complaint on November 26, 2014, and plaintiff and defendants Nexstar Broadcasting Group, Inc. ("Nexstar"); Mission Broadcasting, Inc. ("Mission"); Communications Corporation of America ("CCA") and Silver Point Capital Fund, L.P., by their respective attorneys, having consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law herein, and without this Final Judgment constituting any evidence against or an admission by any party with respect to any issue of law or fact herein;

AND WHEREAS, defendants have agreed to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of the Divestiture Assets to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires certain divestitures to be made for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestitures required below can and will be made, and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW, THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is hereby ORDERED, ADJUDGED, AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over each of the parties hereto and over the subject matter of this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II. Definitions

As used in this Final Judgment:

A.      "Nexstar" means defendant Nexstar Broadcasting Group, Inc., a Delaware corporation with its headquarters in Irving, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

B.      "Mission" means defendant Mission Broadcasting, Inc. a Delaware corporation with its headquarters in Westlake, Ohio, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C.      "CCA" means Communications Corporation of America, a Delaware corporation headquartered in Lafayette, Louisiana, its successors and assigns, and its

subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

D.      "Silver Point" means Silver Point Capital Fund, L.P, a Delaware limited partnership headquartered in Greenwich, Connecticut, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

E.      "Acquirer" means BCBE, or another entity to which the defendants divest the Divestiture Assets.

F.      "BCBE" means Bayou City Broadcasting Evansville, Inc., a Delaware corporation headquartered in Boston, Massachusetts, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

G.      "WEVV-TV" means the broadcast television station located in the Evansville, Indiana DMA owned by defendant CCA operating on virtual Channel 44.

H.      "Divestiture Assets" means all of the assets, tangible or intangible, used in the operation of WEVV-TV, including, but not limited to, all real property (owned or leased) used in the operation of the station, all broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property used in the operation of the station; all licenses, permits, authorizations, and applications therefore issued by the Federal Communications Commission ("FCC") and other government agencies related to that station; all contracts (including programming contracts and rights), agreements, network affiliation agreements, leases and commitments and understandings of defendant CCA relating to the operation of WEVV-TV; all trademarks, service marks, trade names, copyrights, patents, slogans, programming materials,

and promotional materials relating to WEVV-TV; all customer lists, contracts, accounts, and credit records; and all logs and other records maintained by defendant CCA in connection with WEVV-TV.

I.      "DMA" means designated market area as defined by A.C. Nielsen Company based upon viewing patterns and used by the *Investing In Television BIA Market Report 2014* (1st ed.). DMAs are ranked according to the number of households therein and are used by broadcasters, advertisers and advertising agencies to aid in evaluating television audience size and composition.

### III. Applicability

A.      This Final Judgment applies to Nexstar, Mission, CCA, and Silver Point as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.      If, prior to complying with Sections IV and V of this Final Judgment, defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the defendants' Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirer of the assets divested pursuant to the Final Judgment.

### IV. Divestitures

A.      Defendants are ordered and directed to divest the Divestiture Assets to an Acquirer acceptable to the United States in its sole discretion, in a manner consistent with this Final Judgment and the Hold Separate Stipulation and Order in this case. The divestiture pursuant to this Section shall take place within ninety (90) calendar days after the filing of the Complaint in this matter or five (5) days after notice of entry of this Final Judgment by the

4

Court, whichever is later. The United States, in its sole discretion, may agree to an extension of this time period not to exceed thirty (30) calendar days, and shall notify the Court in such circumstances. Defendants shall use their best efforts to accomplish the divestiture ordered by this Final Judgment as expeditiously as possible, including using their best efforts to obtain all necessary FCC approvals as expeditiously as possible.

B.      In the event that defendants are attempting to divest the assets to an Acquirer other than BCBE, in accomplishing the divestiture ordered by this Final Judgment,

(1)      Defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets;

(2)      Defendants shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment;

(3)      Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privileges or work-product doctrine; and

(4)      Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

C.      Defendants shall provide the Acquirer and the United States information relating to the personnel involved in the operation and management of the Divestiture Assets to enable the Acquirer to make offers of employment. Defendants shall not interfere with any negotiations

by the Acquirer to employ or contract with any employee of any defendant whose primary responsibility is the operation or management of the Divestiture Assets.

      D.      Defendants shall permit the Acquirer of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of WEVV-TV; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

      E.      Defendants shall warrant to the Acquirer that each asset will be operational on the date of sale.

      F.      Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

      G.      Defendants shall warrant to the Acquirer that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

      H.      Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V of this Final Judgment, shall include the entire Divestiture Assets, and be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing commercial television broadcasting business and the divestiture of such assets will achieve the purposes of this Final Judgment and remedy the competitive harm alleged in the Complaint. The divestiture, whether pursuant to Section IV or Section V of this Final Judgment:

(1)     shall be made to an Acquirer that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the television broadcasting business in the Evansville, Indiana DMA; and

(2)     shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between the Acquirer and defendants gives defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

### V. Appointment of Trustee

A.     If either (a) the defendants have not divested the Divestiture Assets within the time period specified in Paragraph IV(A), or (b) the defendants have reason to believe that BCBE may be unable to complete the purchase of the Divestiture Assets, defendants shall notify the United States of that fact in writing.

B.     If (a) the defendants have not divested the Divestiture Assets within the time period specified in Paragraph IV(A), or (b) the United States decides in its sole discretion that BCBE is likely to be unable to complete the purchase of the Divestiture Assets, upon application of the United States in its sole discretion, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

C.     After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer, and in a manner, acceptable to the United States in its sole discretion at such price and on such terms as are then obtainable upon reasonable effort by

7

the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Paragraph V(D) of this Final Judgment, the trustee may hire at the cost and expense of defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture. Defendants shall inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment and contact information for the trustee.

D.     Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objection by defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

E.     The trustee shall serve at the cost and expense of defendants, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications. The trustee shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the trustee, all remaining money shall be paid to defendants and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount. If the trustee and Defendants are unable to reach agreement on the trustee's compensation or other

terms and conditions within fourteen (14) calendar days of appointment of the trustee, the United

States may, in its sole discretion, take appropriate action, including making a recommendation to

the Court.

      F.     Defendants shall use their best efforts to assist the trustee in accomplishing the

required divestiture. The trustee and any consultants, accountants, attorneys, and other persons

retained by the trustee shall have full and complete access to the personnel, books, records, and

facilities of the business to be divested, and defendants shall develop financial and other

information relevant to such business as the trustee may reasonably request, subject to reasonable

protection for trade secret or other confidential research, development, or commercial

information. Defendants shall take no action to interfere with or to impede the trustee's

accomplishment of the divestiture.

      G.     After his or her appointment, the trustee shall file monthly reports with the

United States and, as appropriate, the Court setting forth the trustee's efforts to accomplish the

divestiture ordered under this Final Judgment. To the extent such reports contain information

that the trustee deems confidential, such reports shall not be filed in the public docket of the

Court. Such reports shall include the name, address, and telephone number of each person

who, during the preceding month, made an offer to acquire, expressed an interest in acquiring,

entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any

interest in the Divestiture Assets, and shall describe in detail each contact with any such

person. The trustee shall maintain full records of all efforts made to divest the Divestiture

Assets.

      H.     If the trustee has not accomplished the divestiture ordered under this Final

Judgment within six (6) months after its appointment, the trustee shall promptly file with the

Court a report setting forth: (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture have not been accomplished, and (3) the trustee's recommendations. To the extent that such report contains information that the trustee deems confidential, such report shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

I.      If the United States determines that the trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute trustee.

## VI. Notice of Proposed Divestiture

A.      Within two (2) business days following execution of a definitive divestiture agreement, defendants or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendants, the proposed Acquirer, any other third party, or

the trustee if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the proposed Acquirer, any third party, and the trustee, whichever is later, the United States, in its sole discretion, shall provide written notice to defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Paragraph V(D) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by defendants under Paragraph V(D), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. Hold Separate

Until the divestiture required by this Final Judgment has been accomplished, defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

### IX. Affidavits

A.        Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V, defendants shall deliver to the United States an affidavit as to the fact and manner of their compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period.

B.        Each such affidavit shall also include a description of the efforts defendants have taken to complete the sale of the Divestiture Assets – including efforts to secure regulatory approvals – and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by defendants, including limitation on information, shall be made within fourteen (14) days of receipt of such affidavit.

C.        Within twenty (20) calendar days of the filing of the Complaint in this matter, each defendant shall deliver to the United States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Each such affidavit shall also include a description of the efforts defendants have taken to complete the sale of the Divestiture Assets, including efforts to secure FCC or other regulatory approvals. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in

defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

D.      Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X. Compliance Inspection

A.      For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as any Hold Separate Order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

(1)      access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copies or electronic copies of, all books, ledgers, accounts, records, data and documents in the possession, custody or control of defendants, relating to any matters contained in this Final Judgment; and

(2)      to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.      Upon the written request of an authorized representative the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit such written reports or

responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. No Reacquisition

A.      Defendants may not (1) reacquire any part of the Divestiture Assets, (2) acquire any option to reacquire any part of the Divestiture Assets or to assign the Divestiture Assets to any other person, (3) enter into any local marketing agreement, joint sales agreement, other cooperative selling arrangement, or shared services agreement, or conduct other business negotiations jointly with the Acquirer with respect to the Divestiture Assets, or (4) provide financing or guarantees of financing with respect to the Divestiture Assets, during the term of this Final Judgment. The shared services prohibition does not preclude Defendants from continuing or entering into agreements in a form customarily used in the industry to (1) share

14

news helicopters or (2) pool generic video footage that does not include recording a reporter or other on-air talent, and does not preclude defendants from entering into any non-sales-related shared services agreement that is approved in advance by the United States in its sole discretion.

B.     Notwithstanding any prohibition in this section, Defendants may acquire an affiliation with the FOX or CBS broadcast networks serving the Evansville, Indiana DMA during the period of this Final Judgment only if all of the following conditions are met:

(1)     at least one year has elapsed from the date of the filing of the Complaint in this matter;

(2)     Defendants notify the Department of Justice in writing of their intention to acquire the FOX or CBS affiliation in Evansville; and

(3)     the Department of Justice acting in its sole discretion gives its approval for the Defendants to acquire the FOX or CBS affiliation in Evansville.

Within ten (10) business days of receiving notice from the Defendants, the Department will respond in writing giving its approval or requesting additional information from the Defendants. Within fifteen (15) business days of receiving the requested additional information, the Department will respond in writing either giving or withholding its approval.

## XII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

15

## XIII. Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years

from the date of its entry.

## XV. Public Interest Determination

Entry of this Final Judgment is in the public interest. The parties have complied with the

requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making

copies available to the public of this Final Judgment, the Competitive Impact Statement, and any

comments thereon, and the United States' responses to comments. Based upon the record before

the Court, which includes the Competitive Impact Statement and any comments and responses to

comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: ___2|27|2015___

                                Court approval subject to procedures of
                                  Antitrust Procedures and Penalties Act,
                                  15 U.S.C. § 16

                                  United States District Judge